OPINION OF THE COURT
Carol R Edmead, J.
Plaintiff alleges that on October 10, 2007 at the nightclub “Tenjune,” in the Meatpacking District of New York City, NBA basketball player Jason Kidd “grabbed the plaintiffs buttocks and ‘crotch’ area on multiple occasions without her permission and consent.”
The plaintiff, Jane Doe, now moves by order to show cause to proceed anonymously to avoid the possibility of unwanted publicity and the exacerbation of the emotional distress suffered from the alleged incident.
The application is denied.
Plaintiffs Contentions
According to the complaint, plaintiff and Jason Kidd were within the premises known as Tenjune, located on Little West 12th Street, New York, New York. Plaintiff alleges that defendant “willfully and intentionally verbally threatened her after grabbing her buttocks and ‘crotch’ area.” It is claimed that the “battery and assault which was committed upon the plaintiff, was not in any way brought on by nor provoked by the plaintiff.”
Plaintiff alleges that defendant’s actions amounted to a series of harmful or offensive contacts to the plaintiffs person, all of which were done intentionally by the defendant, without her consent. Plaintiff also alleges that defendant’s actions were reckless, extreme and outrageous, and created a reasonable apprehension in plaintiff of immediate harmful or offensive contact. As a proximate result of defendant’s actions, plaintiff has allegedly sustained “physical injury, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.” Plaintiff also has allegedly incurred medical expenses and other economic damages, continues to be “sick, sore, lame and disabled” and is unable to pursue her usual activities and employment.
In support of her application to proceed anonymously, plaintiff argues that Civil Rights Law § 50-b was enacted to provide a limited right of privacy to a specific class of individuals, namely, victims of alleged sex crimes. Plaintiff further argues that, based upon the allegations set out in the complaint, it is clear that she *784 is an intended beneficiary of this statute. Plaintiff contends that this is potentially going to be a high-profile case due to defendant’s status as a professional athlete. Therefore, plaintiff should be allowed to proceed anonymously as Jane Doe. Defendant’s Opposition
Defendant argues that Civil Rights Law § 50-b provides no authority for plaintiff to proceed anonymously in this case. Anonymity under section 50-b has been maintained in civil actions relating to a criminal case where substantial evidence existed that a sex offense had been committed. Such evidence exists, for example, where an assailant has been indicted or convicted of a sex offense, or where probable cause exists to believe he has committed a sex offense. In this case, the office of the Manhattan District Attorney has indicated that no charges arising from plaintiffs accusations have been nor are anticipated to be filed against the defendant, and the investigation of plaintiff’s complaint determined that insufficient evidence existed to warrant prosecution. Therefore, defendant argues, section 50-b provides no basis for anonymity.
Additionally, plaintiff does not identify any substantial privacy right sufficient to overcome the presumption of openness that attends judicial proceedings in New York. The public has a constitutional and common-law right of access to court proceedings. Defendant contends that the instant action does not concern a “matter of sensitive or personal nature,” and that plaintiff is “merely attempting to avoid annoyance and criticism.” Plaintiffs allegations amount to a single, brief, public encounter between two fully clothed adults at a nightclub. And, these alleged actions contrast sharply with the “highly personal and intimate matters” that historically have been protected by party anonymity. Thus, plaintiffs desire to avoid the possibility of unwanted publicity and emotional distress is insufficient to warrant this protection.
Defendant also points out that the County Clerk has issued instructions to parties seeking privacy protection on how to file and caption an action. Such instructions explain how an anonymous caption may be obtained and provide for the use of pseudonyms for one party and/or both parties. Plaintiff disregarded these instructions and, by so doing, plaintiff has violated defendant’s privacy. Further, it would be unfair and prejudicial to allow plaintiff to sue defendant in his real name, while allowing plaintiff to proceed anonymously. In fact, plaintiff has flouted the practice of the court, which calls for complete *785 anonymity, by subjecting defendant to such publicity and reputational damage. By disregarding this practice, plaintiff has forfeited any claim she might have otherwise had to the relief she is seeking.
Further, on October 18, 2007 and December 14, 2007, plaintiffs counsel, Russell S. Adler, Esq. made statements to the press about the alleged incident. On both dates, Adler made accusations against defendant while shielding plaintiffs name. As a result of plaintiffs statements, and the publishing of defendant’s name, defendant claims he has suffered adverse publicity. Plaintiff also failed to demonstrate that defendant will not be harmed if her request is granted.
Analysis
Plaintiff asserts a right to proceed anonymously under Civil Rights Law § 50-b. Pursuant to Civil Rights Law § 50-b (1),
“The identity of any victim of a sex offense, as defined in article one hundred thirty[1] ... of the penal law . . . shall be confidential. No report, paper, picture, photograph, court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim except as provided in subdivision two of this section.”
While plaintiffs order to show cause does not specify which “sex offense” applies so as to trigger section 50-b protection, the allegations of the complaint and plaintiffs counsel’s oral argument indicate that she claims that she was an alleged victim of a sex offense as defined under Penal Law article 130, section 130.55, “sexual abuse in the third degree.” (Transcript at 4:11-15.) Pursuant to section 130.55, a person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter’s consent. “Sexual contact” means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching *786 of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing (Penal Law § 130.00 [3]).
It cannot be disputed that, as alleged, the sexual act committed against the plaintiff was personal and offensive to the plaintiff, and, arguably, falls within the definition of section 130.55. Thus, at first blush, it would appear that plaintiff is a person covered under the anonymity provision of Civil Rights Law § 50-b. However, the language of Civil Rights Law § 50-b does not exist in a vacuum.
The First Department held that Civil Rights Law § 50-b was inapplicable where a sex offense charge against a defendant in an underlying criminal case was dismissed (see Matter of Brown v New York City Police Dept., 264 AD2d 558, 561 [1st Dept 1999] [declining to apply section 50-b on the ground that a “dismissal” of the sex offenses, combined with the victim’s testimony that petitioner did not rape her, led to a conclusion that there is “in fact no victim of a sex offense whose identity needs protection”]). Notably, courts which have afforded victims of a sexual offense protection under section 50-b involved circumstances under which the victim’s cooperation during the course of a prosecution of an alleged sex crime was necessary (see People v McDaniel, 81 NY2d 10 [1993] [defendant charged and prosecuted for rape]; Matter of Fischetti v Scherer, 44 AD3d 89 [1st Dept 2007] [defendant charged and prosecuted for sex abuse in the third degree]; People v Wiggins, 1 Misc 3d 913 [Sup Ct, Bronx County 2004] [defendant charged with attempted sexual abuse in the first degree]; Deborah S. v Diorio, 153 Misc 2d 708 [Civ Ct, NY County 1992] [defendant charged with rape, sodomy and sexual assault]; DeJesus v Senkowski, 2006 WL 2707330, 2006 US Dist LEXIS 67559 [SD NY 2006] [applying Civil Rights Law § 50-b in a reported decision to protect the names of victims of a petitioner seeking habeas corpus relief relating to his conviction of, inter alia, sodomy]; Terrence v Senkowski, 1999 WL 301690, 1999 US Dist LEXIS 6916 [SD NY 1999] [same]; cf. Doe v Del Rio, 241 FRD 154, 160 [2006] [although not involving section 50-b, declining plaintiffs’ request for anonymity; plaintiffs’ complaints to the police department regarding defendant sergeant’s sexual abusive acts resulted in no disciplinary charges]).
This observation is not inconsistent with the legislative history of Civil Rights Law § 50-b. Although resort to legislative history is usually warranted only when the language of the stat *787 ute is ambiguous (United States ex rel. Taylor v Gabelli, 2005 WL 2978921, 2005 US Dist LEXIS 26821 [SD NY 2005]), in this case, the intent of the framers of the statute is critical as to the intended covered individuals of an “offense.” In this regard, justification for section 50-b is found in the Senate Memorandum in Support of chapter 643 of the Laws of 1999 (1999 McKinney’s Session Laws of NY, at 2017), where it is expressed that
“a victim of a sex crime who is required to testify in a criminal proceeding against a defendant who allegedly committed the crime, is entitled to protection from public disclosure. Thus protection serves two important purposes: one, it spares the victim the embarrassment of being publicly identified in the news media; and two it encourages victims to cooperate in the prosecution of sexual offenses because they are assured of privacy.” (Emphasis added.)
The legislative history reveals that the “victim of a sex offense” contemplated by the statute is one whose cooperation is necessary toward the prosecution of a sex crime. Here, it is uncontested that the Manhattan District Attorney’s Office declined to bring any charges against defendant, and no prosecution of the defendant is contemplated in the future.
In any event, when balancing the plaintiffs claimed right to privacy against the presumption of openness in judicial proceedings, the scale tips in favor of disclosure. Anonymity is warranted where there is “ ‘a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings’ ” (Doe v Del Rio, 241 FRD 154, 157 [SD NY 2006], quoting Free Speech v Reno, 1999 WL 47310, *2, 1999 US Dist LEXIS 912, *5 [SD NY 1999]; Adam A. Milani, Doe v Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort, 41 Wayne L Eev 1659, 1681 [1995]).[2] The constitutionally-embedded presumption of openness of the judicial process operates to diminish the possibilities *788 for injustice, incompetence, perjury and fraud (Danco Labs. v Chemical Works of Gedeon Richter, 274 AD2d 1 [1st Dept 2000]). And, the very openness of the process serves to “ensure that the proceedings are conducted efficiently, honestly and fairly” (id. at 7).
This openness includes the revelation of the names of the parties, as set forth in 6 J. Wigmore, Evidence § 1834 et seq. (Chadbourn rev 1976) (Doe v Diocese Corp., 43 Conn Supp 152, 647 A2d 1067 [1994]). The use of fictitious names has been noted to run afoul of the public’s common-law right of access to judicial proceedings, a right that is supported by the US Constitution First Amendment (Doe v Del Rio, 241 FRD 154, 156 [2006], quoting Doe v Deschamps, 64 FRD 652, 653 [D Mont 1974] [“Indeed, (Olawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties(’) ”]). Therefore, to obtain anonymity, there must be a showing that the privacy interest involved is substantial, so as to overcome the presumption of openness that attends judicial proceedings (Milani, Doe v Roe, 41 Wayne L Rev at 1684; “J. Doe No. 1” v CBS Broadcasting Inc., 24 AD3d 215, 215 [1st Dept 2005], citing Doe v New York Univ., 6 Misc 3d 866 [Sup Ct, NY County 2004] [holding that the “action was not properly brought pseudonymously since plaintiffs have not alleged a matter implicating a privacy right so substantial as to outweigh the customary and constitutionally embedded presumption of openness in judicial proceedings]; Doe v Del Rio, 241 FRD at 160-162 [denying plaintiffs anonymity, finding that allegations that defendant “pulled plaintiff Jane Doe toward him and attacked her sexually, by fondling her breasts, arms, neck and back, kissing her, and rubbing his body against her” as “not so extreme as to support sufficiently an interest in anonymity”; comparing plaintiffs claim to sexual harassment claims, stating that defendant’s sexual attack of plaintiff was “no more intimate than those alleged in hundreds of sexual harassment cases that are prosecuted openly in the victims’ names every day in our courts”]).
Guidelines for the exercise of the court’s discretion in considering anonymity requests include:
“[Wjhether the justification asserted by the request *789 ing party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; . . . whether the action is against a governmental or private party; and . . . the risk of unfairness to the opposing [party] from allowing an action against it to proceed anonymously.” (Milani, Doe v Roe, 41 Wayne L Rev at 1682, quoting James v Jacobson, 6 F3d 233, 238 [4th Cir 1993].)
Embarrassment is plainly insufficient. Instead, anonymity should be limited to “compelling” situations involving “highly sensitive matters” including “social stigmatization,” real danger of “physical . . . harm,” or “where the injury litigated against would occur as a result of the disclosure of the plaintiff’s identity” (Doe v New York Univ., 6 Misc 3d 866, 879 [2004]). Plaintiffs allegations herein reflect an intent to merely avoid the annoyance and criticism that may attend to this type of proceeding from sources including, but not limited to, the press. There is no indication that the disclosure of plaintiffs identity will pose a risk of retaliatory physical or mental harm to the plaintiff. Notably, instead of declining comment to the press’s inquiries concerning this action, plaintiff’s representatives undermined her purported interest to keep her personal matters “private.” The record indicates that, in response to news reporters’ queries, plaintiffs representatives reasserted the allegations in the complaint, and openly identified and criticized the defendant, thereby sensationalizing this case even more. Here, plaintiffs voluntary identification of a widely-recognized and famous basketball player, in her pleadings, and to the press, undermines her claimed need to protect her privacy and identity (see Doe v Diocese Corp., 43 Conn Supp 152, 647 A2d 1067 [1994] [noting that protection similar to that given plaintiff under Civil Rights Law § 50-b should be withdrawn if he goes into the public forum telling people in general about his experience]).
Like the Southern District Court of New York in Doe v Del Rio, this court is loathe to weigh degrees of violation, and does not trivialize the wrongfulness of defendant’s alleged acts or plaintiffs alleged injuries (Doe v Del Rio, supra). However, upon review of the case law, within and without this jurisdiction, and an interpretation of the statute in light of its remedial purpose (see e.g. T.S.R. v J.C., 288 NJ Super 48, 57, 671 A2d 1068, 1073 *790 [1996] [declining to apply anonymity statute which stated “initials or fictitious names ‘shall’ be used for all parties,” by looking to its remedial purpose]), this court concludes that the suppression of plaintiff’s identity in the pleadings is unwarranted under the circumstances herein.[3]
Thus, for the foregoing reasons, plaintiffs request to proceed anonymously pursuant to Civil Rights Law § 50-b is denied.
In accordance with the above, it is hereby ordered that plaintiff’s order to show cause is denied; and it is further ordered that plaintiff shall amend the complaint, replacing “Jane Doe” with her true name.

. Article 130, entitled “Sex Offenses,” deals with three kinds of sexual activity: sexual intercourse, deviate sexual intercourse, and sexual abuse by sexual contact or by the insertion of a “foreign object” in the vagina, urethra, penis or rectum (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 130, at 198).

. Application of such a balancing test between the public’s interest and the victim’s privacy interest is also found in cases from sister courts (T.S.R. v J.C., 288 NJ Super 48, 57, 671 A2d 1068, 1073 [1996] [applying a balancing test in the face of an anonymity statute, New Jersey Statutes Annotated § 2A:61B-1 (f) (1), which provides that “(t)he name, address, and identity of a victim or a defendant shall not appear on the complaint or any other public record ás defined in P.L.1963, c. 73 (C.47:1A-1 et seq.). In their place initials or a fictitious name shall appear]).” Illinois and Iowa also apply a balancing test, weighing a *788 party’s right to privacy against the demands of the public interest (Doe v Doe, 282 111 App 3d 1078, 1082, 668 NE2d 1160, 1163 [1996]; Riniker v Wilson, 623 NW2d 220, 226 [Iowa Ct App 2000]).

. The court notes there are few reported decisions addressing the narrow issue of whether a civil plaintiff is entitled to proceed anonymously under Civil Rights Law § 50-b (Anonymous v Anonymous, 191 Misc 2d 707 [Sup Ct, NY County 2002]). Instead, anonymity has generally arisen during the course of litigation when a party requests the broader relief of sealing court records (id).